## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AULIO ESTRELLA; LILIAN RAMIREZ ESTRELLA**, <br><br> **PLAINTIFFS**, <br><br> VS. <br><br> **NEW PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICING, LLC, PARKER MCCAY, P.A.**, <br><br> **DEFENDANTS**. | Case No. <br><br><br> **COMPLAINT** <br><br><br> **(DEMAND FOR A JURY TRIAL)** |

Plaintiffs, Aulio Estrella and Lilian Ramirez Estrella, by and through counsel, hereby state for their Complaint against Defendant New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing, LLC.

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiffs Aulio Estrella and Lilian Ramirez Estrella ("Plaintiffs" or the "Estrellas") are the owners of residential real property, located at and commonly known as 36 Redwood Avenue, Paterson, NJ 07522 (the "Property") which they currently occupy and have occupied as their primary principal residence at all times relevant to this Complaint.

2.     Defendant New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing, LLC (hereinafter "Shellpoint") is the current servicer of a Note executed by the Estrellas (the "Note") and of a Mortgage on the Property that secures said Note (the "Mortgage") (collectively, the "Loan"). Shellpoint services the Loan on behalf of The Bank of New York Mellon fka The Bank

of New York, as trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2006-18CB, Mortgage Pass-Through Certificates, Series 2006-18CB ("BONY").

3.      Parker McCay, P.A. ("Parker McCay") is a New Jersey-based law firm representing Shellpoint and BONY in the foreclosure matter against the Estrellas captioned *The Bank of New York Mellon vs. Aulio Estrella et al.*, assigned Docket Number F-18609-17 (the "Foreclosure Matter").

4.      Shellpoint has been the servicer of the Loan since at least March 1, 2014.

5.      This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §1024.1, et seq. of Regulation X.

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. (RESPA).

7.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiffs maintain the Home as their primary residence within this District.

## INTRODUCTION

8.      The Estrellas restate and incorporate all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

9.      This case concerns material errors that the Shellpoint made by dual-tracking" the Estrellas by processing a loss mitigation application from the Estrellas while simultaneously prosecuting a foreclosure action against her from November 22, 2017 through the present. On or about August 4, 2017, BONY caused the foreclosure action to be filed against the Estrellas being

known as "*The Bank of New York vs. Estrella Aulio, et al.*," Docket No. F-018609-17 (the "Foreclosure Matter").

10.     Thereafter, the Estrellas applied for a loan modification from and despite the pending application, Shellpoint, through Parker McCay, caused a foreclosure against the Estrellas home to move forward in violation of RESPA, giving rise to the Estrellas' RESPA claims against Shellpoint.  The Estrellas were "dual-tracked" by Shellpoint in violation of the new federal regulations governing mortgage servicers and the manner in which regulated mortgage servicers must behave when a borrower's loss mitigation application is pending prior to and during a foreclosure proceeding.

11.     At all times relevant herein, Shellpoint serviced the Estrellas' mortgage Loan and were responsible to process the Estrellas' loss mitigation applications and evaluations for mortgage relief options, all as anticipated by 12 U.S.C. §§2601, et seq. and the Regulations promulgated thereunder.

12.     Shellpoint's actions in this loss mitigation effort did not meet the minimal standards of conduct for mortgage servicers under the newly-enacted Regulation "X" and Shellpoint has caused the Estrellas great financial damage, humiliation, suffering, physical stress and emotional distress, further damage to their credit standing, and forced the Estrellas to incur attorneys' fees, all of which will appear more fully below.

13.     On January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

14.     The Loan is a "federally related mortgage loan" as that term is defined by 12 C.F.R. §1024.2(b).

15.     Shellpoint is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers" as defined in 12 C.F.R. §1026.41(e)(4) or the exemption for a "qualified lender" as defined in 12 C.F.R. §617.700.

16.     The Estrellas are asserting claims for relief against Shellpoint for breaches of the specific rules under Regulation X as set forth below.

17.     The Estrellas have a private right of action for the claimed breaches under RESPA pursuant to 12 U.S.C. §2605(f) and such actions provide for remedies including recompense for actual damages, statutory damages, and the Estrellas' attorneys' fees.

## OPERATIVE FACTS RELATING TO DUAL TRACKING
## COUNTS ONE TO SIX

18.     The Estrellas restate and incorporate all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

19.     On August 4, 2017, Shellpoint caused the instant foreclosure action to be filed against the Estrellas being known as "*The Bank of New York vs. Estrella Aulio, et al.*," Docket No. F-018609-17.

20.     On October 20, 2017, the Estrellas, through counsel, submitted correspondence captioned "Request for Information Pursuant to 12 C.F.R. §1024.36" (the "RFI") to Shellpoint at the address designated by Shellpoint for the receipt of such correspondence pursuant to 12 C.F.R. 12 C.F.R. §1024.35(c) and §1024.36(b) (the "Designated Address") via Certified U.S. Mail [Receipt No.: 7013 1090 0002 3337 4858]. ***Copy of RFI attached as Exhibit 1***.

21.     The RFI requested the following information and/or documents:

A.  An exact reproduction of the life of loan mortgage transactional history for this loan from the contract system of record from your electronic software program for this loan. For purposes of identification, the life of loan transactional history means any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any fees or charges including but not limited to property inspection fees, broker price opinion fees, legal fees, escrow fees, processing fees, technology fees, or any other collateral charge. Also, to the extent this life of loan transactional history includes in numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code.

B.  Copies of any and all servicing notes related to your servicing of the above-referenced mortgage loan for the time period from April 1, 2016 to the present.

C.  Copies of any and all broker's price opinions you performed or otherwise obtained for the above-referenced property in relation to the above-referenced mortgage loan.

D.  The physical location of the original note related to the above-referenced mortgage loan.

E.  A true and accurate copy of the original note related to the above-referenced mortgage loan.

F.  The identity, address, and other relevant contact information for the custodian of the collateral file containing the original collateral documents for the above-referenced mortgage loan, including, but not limited to the original note.

G.  A detailed copy of your last two (2) analyses of the escrow account of the mortgage.

H.  Please state each and every date during the time period from

> January 10, 2014, to the present on which you received a complete loss mitigation application from the above-referenced Borrower.   Please note that, pursuant to 12 C.F.R. § 1024.41(b)(1), a "complete loss mitigation application" is defined as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower."

22.     Shellpoint received the RFI on October 24, 2017. *Copy of USPS Tracking attached as Exhibit 2*.

23.     The Estrellas, by and through counsel, received correspondence from Shellpoint in response to the RFI dated November 1, 2017 (the "Response"). *Copy of Response attached as Exhibit 3*.

24.     On or about January 25, 2018, the Estrellas, through counsel submitted correspondence captioned "Notice of error pursuant to 12 C.F.R.§1024.35(b)(11) for failure to properly respond to a request for information in compliance with 12 C.F.R. §1024.36" ("NOE #1") to Shellpoint at the Designated Address via U.S. Certified Mail [Receipt No.: 7015 1520 0000 9420 9331]. *Copy of NOE #1 attached as Exhibit 4*.

25.     In the NOE, the Estrellas notified Shellpoint that the Response was deficient as it failed to provide all of the information and/or documentation consisting of or otherwise related to:

> 1. An exact reproduction of the life of loan mortgage transactional history for this loan from the contract system of record from your electronic software program for this loan. For purposes of identification, the life of loan transactional history means any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any fees or charges including but not limited to property inspection fees, broker

price opinion fees, legal fees, escrow fees, processing fees, technology fees, or any other collateral charge. Also, to the extent this life of loan transactional history includes in numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code.

2.  Copies of any and all servicing notes related to your servicing of the above-referenced mortgage loan for the time period from April 1, 2016 to the present.

3.  Copies of any and all broker's price opinions you performed or otherwise obtained for the above-referenced property in relation to the above-referenced mortgage loan.

[…]

8.  Please state each and every date during the time period from January 10, 2014, to the present on which you received a complete loss mitigation application from the above-referenced Borrower.   Please note that, pursuant to 12 C.F.R. § 1024.41(b)(1), a "complete loss mitigation application" is defined as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." *[NOTE: While Shellpoint did provide a copy of the modification of the loan at issue and the approval letter for the same, this does not address the actual request contained in the RFI which is the date(s) upon which Shellpoint received a complete loss mitigation application.]*

*See Exhibit 4.*

26.    Shellpoint received NOE #1 on January 31, 2018.   **Copy of USPS Tracking attached as Exhibit 5**.

27.    Shellpoint responded to NOE #1 via correspondence dated February 23, 2018 (the "NOE #1 Response"), falsely claiming the life of loan payment history was included in the

Response and otherwise providing for the first time the servicing notes, broker price opinions, and loss mitigation information requested.  ***Copy of NOE #1 Response attached as Exhibit 6***.

28.     On or about November 20, 2017, the Estrellas submitted a loss mitigation application to Shellpoint ("Application").

29.     Shellpoint sent the Estrellas correspondence dated November 22, 2017 (the "Missing Documents Notice"), confirming receipt of the Application and advising the Estrellas the only document required to make the Application complete was "copy of your most recent bank statements including all pages of all borrowers/contributors accounts."  The Missing Documents Notice provided the Estrellas until December 22, 2017 in which to submit the missing documents.  ***Copy of Missing Documents Notice attached as Exhibit 7***.

30.     On or around December 1, 2017, the Estrellas submitted to Shellpoint the documents requested in the Missing Documents Notice, thereby rendering the Application complete for purposes for 12 C.F.R. §1024.41.  ***Copy of the fax transmission is attached as Exhibit 8***.

31.     Shellpoint sent the Estrellas correspondence dated January 10, 2018, improperly informing the Borrowers "[w]e are unable to offer you a loss mitigation option because you did not provide us with the documents we requested."  ***Copy of notice attached as Exhibit 9***.

32.     At no point between December 1, 2017, and January 10, 2018 did Shellpoint send the Estrellas additional correspondence requesting documents.

33.     Despite Shellpoint providing false information regarding the Estrellas failure to submit requested documents, the Estrellas submitted a new application (the "Second

Application") to Shellpoint via facsimile on February 27, 2018. *Copy of the fax transmission is attached as Exhibit 10*.

34.     On February 28, 2018, Shellpoint, through Parker McCay, caused BONY to move for summary judgment against the Defendants in the instant matter.

35.     On or around March 2, 2018, in response to the improper denial and Shellpoint's causing of BONY to move for summary judgment, the Estrellas sent correspondence to Shellpoint at the Designated Address, copying Parker McCay, captioned "Notice of error pursuant to 12 C.F.R. §1024.35(b)(10) for improperly moving for summary judgment while a complete loss mitigation application is pending in violation of 12 C.F.R. §1024.41(g); Notice of Error pursuant to 12 C.F.R. §1024.35(b)(11) for failure to exercise reasonable diligence in obtaining a complete loan modification application in violation of 12 C.F.R. §1024.41(b)" ( "NOE #2"). *Copy of NOE #2 attached as Exhibit 11*.

36.     NOE #2 notified Shellpoint and Parker McCay of Shellpoint's servicing violations under 12 C.F.R. § 1024.41 for 1) improperly moving for summary judgment while the Estrellas' complete loss mitigation application was pending review; and 2) failing to exercise reasonable diligence in reviewing Application #1.  *See Exhibit 11*.

37.     Shellpoint sent the Estrellas correspondence dated March 1, 2018 in response to the Second Application (the "New Missing Documents Notice"), informing them the Second Application was under review, and the only document required to make the Second Application complete was:

☒   Completed and signed Uniform Borrower Assistance Form

For each borrower/contributor who has rental income or if you are current on your mortgage payments:

☒   Copy of the mortgage statement showing the principal, interest, taxes, and insurance amounts (must be dated less than 90 days old at the time the complete package is received).

The New Missing Documents Notice provided the Estrellas until March 31, 2018 in which to submit the missing documents. ***Copy of New Missing Documents Notice attached as Exhibit 12***.

38.     On or around March 19, 2018, the Defendants submitted to Shellpoint the documents requested in the Missing Documents Notice, thereby rendering the Application complete ***again*** for purposes for 12 C.F.R. §1024.41. ***Copy of the fax transmission is attached as Exhibit 13***.

39.     In response to NOE #2, Shellpoint sent correspondence to the Estrellas dated April 6, 2018 (the "NOE #2 Response"). ***Copy of NOE #2 Response attached as Exhibit 14***.

40.     In the NOE #2 Response, Shellpoint claimed they did not commit an error in reviewing Application #1 because "[t]he loan's assigned loss mitigation representative made attempts ***via telephone*** on December 4, 2017 and December 16, 2017 to discuss the required documentation; however, no contact was made." (emphasis added). ***See Exhibit 14***.

41.     Shellpoint disregarded the rules set forth under 12 C.F.R. §1024.41 which require written correspondence. Simply put, telephone calls are not sufficient under these regulations.

42.     In the NOE #2 Response, Shellpoint failed to substantively address their error of moving for summary judgment while a complete loss mitigation application was pending. ***See Exhibit 14***.

43.     On April 25, 2018, the Estrellas submitted all of the documentation requested by and through the NOE Response #2 to Shellpoint via email at lossmitigation@shellpointmtg.com. ***Such submission attached as Exhibit 15***.

44.     Since April 25, 2018, Shellpoint has not requested that the Estrellas supply any missing, supplemental, or corrective information and/or documents in regards to the Estrellas' loss mitigation application.

45.     As such, the Second Application has been complete ***again*** since April 25, 2018.

46.     Despite the Second Application being complete since April 25, 2018, Shellpoint, through Parker McCay, caused BONY to proceed with its Motion, resulting in this court issuing an Order Granting Summary Judgment on May 29, 2018, ***again*** violating 12 C.F.R. 1024.41. Shellpoint did not take any steps to avoid the issuance of said Order. ***Copy of Order attached as Exhibit 16***.

47.     As of the date of this Complaint, Shellpoint has yet to evaluate Application #2**.**

48.     On or around May 29, 2018, the Estrellas, through counsel, submitted correspondence to Shellpoint at the Designated Address captioned "Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(11) for violation of 12 C.F.R. § 1024.41(c)(3); Notice of Error under 12 C.F.R. §1024.35(b)(11) for failing to properly investigate and respond to a borrower's Notice of Error pursuant to 12 C.F.R. §1024.35(e); Requests for copies of documentation  pursuant to 12 C.F.R. § 1024.35(e)(4)" (the NOE #3") via U.S. Certified Mail [Tracking No.: 7017 1000 0000 8861 3549]. ***Copy of the cover page for NOE #3 attached as Exhibit 17***.

49.     According to USPS Tracking, Shellpoint received NOE #3 on June 4, 2018. ***Copy of USPS Tracking attached as Exhibit 18***.

50. In NOE #3, the Estrellas notified Shellpoint of the servicing errors they committed in 1) failing to acknowledge the completeness of Application #3 within five business days of receipt; and 2) failing to properly investigate NOE #2. ***See Exhibit 17***.

51. Shellpoint's actions again constituted prohibited "dual-tracking" of the Estrellas by simultaneously actively pursuing foreclosure and putatively processing a loss mitigation application, all to the Estrellas' great prejudice and damage.

52. Dual tracking by Shellpoint directly and proximately caused the following damages to the Estrellas:

a. They had to retain and pay legal counsel to submit Application #2, submit multiple Notices of Errors to Shellpoint, defend the improperly filed motion for summary judgment, and otherwise continue defending the foreclosure;

b. They suffered extreme emotional distress directly and proximately caused by not knowing day to day whether or not her Shellpoint, through Parker McCay, would continue proceeding with the foreclosure in violation of federal law and cause them to lost their house; and,

c. The Estrellas hoped and believed that by submitting a complete loss mitigation application to Shellpoint that she would be able to have the opportunity to begin the long process of improving her credit standing, but because Shellpoint took longer than the regulations under RESPA allow to review and process her and Shellpoint continued to report the Estrellas to Credit Reporting Agencies as delinquent on their Mortgage note, Shellpoint left the Estrellas unable to obtain credit or insurance at reasonable rates.

53.     Throughout this entire ordeal, the Estrellas have simply wanted to obtain a modification, have the Foreclosure dismissed, and resume making timely, proper payments on their home mortgage loan in order to begin to rehabilitate their credit, and most importantly, remain in her family home.

### COUNT ONE: AGAINST SHELLPOINT
### VIOLATION OF 12 C.F.R. § 1024.41(g)
**(Violations of 12 C.F.R. § 1024.41(b) for failure to exercise reasonable diligence in obtaining documents and information to complete a loss mitigation applications)**

54.     The Estrellas restate and incorporate herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

55.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))"

56.     12 C.F.R. § 1024.41(b) provides that "a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

57.     The CFPB's Official Interpretation of 12 C.F.R. § 1024.41(b)(2)(i)(B) provides that:

> Even if a servicer has informed a borrower that an application is complete (or notified the borrower of specific information necessary to complete an incomplete application), if the servicer determines, in the course of evaluating the loss mitigation application submitted by the borrower, that additional information or a corrected version of a previously submitted document is required, the servicer must promptly request the additional information or corrected document from the borrower pursuant to the reasonable diligence obligation in § 1024.41(b)(1). See § 1024.41(c)(2)(iv) addressing facially complete applications.

58.      Moreover, 12 C.F.R. § 1024.41(c)(2)(iv) provides, in part, that: "[i]f the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application."

59.      Shellpoint failed to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete the Estrellas' loss mitigation application.

60.      Despite the Estrellas having already submitted a complete application by December 1, 2017, Shellpoint notified the Estrellas via correspondence dated January 10, 2018, that Shellpoint withdrew its review alleging "you did not provide us with the documents we requested." ***See Exhibits 7, 8, and 9.***

61.      At no point between December 1, 2017 and January 10, 2018 did Shellpoint send the Estrellas a notice of missing documents.

62.      Shellpoint's attempts to contact the Estrellas via telephone do constitute the required reasonable diligence as 1) Shellpoint is required to send the Estrellas written correspondence, which they failed to do; and 2) Shellpoint never even established contact with the Estrellas through their telephone calls.

63.      Shellpoint's failure to send the required written notice to the Estrellas under 12 C.F.R. §1024.41 of what documents, if any, were missing or incomplete evidences their complete lack of diligence to complete the Application.

64.     Shellpoint's actions in failing to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete the Estrellas' loss mitigation application as expressly required by 12 C.F.R. § 1024.41(c)(2)(iv) and 12 C.F.R. § 1024.41(b)(2)(i)(B), constitutes a clear, separate, and distinct violation of 12 C.F.R. §1024.41.

65.     The Estrellas again had a complete loss mitigation application submitted to Shellpoint by April 25, 2018.

66.     As of the date of this Complaint, Shellpoint has yet to notify the Estrellas their application is complete.  ***See Exhibits 15, 17***.

67.     Shellpoint's failure to send the required written notice to the Estrellas under 12 C.F.R. 1024.41(c)(3) after the April 25, 2018 submission of the status of the Estrellas' Application evidences Shellpoint's complete lack of diligence to complete the Application.

68.     As a result of Shellpoint's failure to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete the Estrellas' loss mitigation application, the Estrellas' suffered actual damages, including the attorney's fees incurred for the time in preparing NOE #2 and #3, the postage cost for mailing the NOE's, and the attorney's fees incurred in submitting the Second Application.

69.     Shellpoint's actions are believed to be a part of a pattern and practice of behavior in conscious disregard for the Estrellas' rights.

70.     As a result of Shellpoint's actions, Shellpoint is liable to the Estrellas for actual damages, statutory damages, costs, and attorneys' fees.

**COUNT TWO: AGAINST SHELLPOINT**
**VIOLATION OF 12 C.F.R. § 1024.41(g)**
**(Violation of prohibition on moving in support of summary judgment with facially complete loss mitigation application pending review)**

71.     The Estrellas restate and incorporate herein all of her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

72.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))"

73.     12 C.F.R. § 1024.41(b)(1) provides that a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.

74.     12 C.F.R. §1024.41(b)(2) provides that if a servicer receives a loss mitigation application forty-five (45) days or more before a foreclosure sale that the servicer must promptly review the application to determine whether the application is complete and notify the borrower in writing within five (5) days, excluding public holidays, Saturdays, and Sundays, whether the application is complete.

75.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(b)(3) provides that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale."

76.     12 C.F.R. §1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to §102[4].41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete".

77.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(c)(2)(iv) provides that 12 C.F.R. §1024.41(c)(2)(iv) "requires a servicer to treat a facially complete application as complete for the purposes of paragraphs (f)(2) and (g) until the borrower has been given a reasonable opportunity to complete the application."

78.     12 C.F.R. §1024.41(g) states that if a borrower submits a complete loss mitigation application after the first filing required for any judicial foreclosure process, but more than thirty-seven (37) days before a foreclosure sale, then a servicer cannot move for foreclosure judgment or order of sale unless: (1) the servicer has sent written notice pursuant to 12 C.F.R. §1024.41(c)(1)(ii), stating that the borrower is not eligible for any loss mitigation options and the borrower has not requested an appeal, or the borrower's appeal has been denied; (2) the borrower rejects all loss mitigation options offered by the servicer; or, (3) the borrower fails to perform under an agreement on a loss mitigation option.

79.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(g) provides that:

> The prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, or ***summary judgment***, which may directly result in a judgment of foreclosure or order of sale. A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by §1024.41, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale[emphasis added].

80.     As of December 1, 2017, either the Estrellas had submitted any and all missing documents and information requested by the written notice required pursuant to §1024.41(b)(2)(i)(B) or Shellpoint had not requested any such missing information or documentation by and through such written notice with regards to the Application. ***See Exhibits 7, 8***.

81.     Shellpoint notified the Estrellas via correspondence dated January 10, 2018 that the Estrellas's application was denied because "you did not provide us with the documents we requested." S***ee Exhibit 9***.

82.     At no point between December 1, 2017, and January 10, 2018 did Shellpoint send the Estrellas additional correspondence requesting documents.

83.     Despite Shellpoint providing false information regarding the Estrellas failure to submit requested documents, the Estrellas submitted a new application (the "Second Application") to Shellpoint via facsimile on February 27, 2018.  ***See Exhibit 4***.

84.     On February 28, 2018, Shellpoint, through Parker McCay, caused BONY to move for summary judgment against the Defendants in the instant matter.

85.     At no point between December 1, 2017 and January 10, 2018: (1) Shellpoint send notice stating that that the Estrellas is not eligible for any loss mitigation options; (2) the Estrellas reject all loss mitigation options offered by Shellpoint, as no such options were offered during this period of time; or, (3) the Estrellas fail to perform under an agreement on a loss mitigation option, as no such options were offered during this period of time.

86. The First Application, which was also a facially complete loss mitigation application, was deemed to be a complete loss mitigation application for the purposes of 12 C.F.R. § 1024.41(g) throughout the time period from January 10, 2018 to February 28, 2018.

87. Shellpoint's actions, in causing BONY to move for summary judgment against the Estrellas in the instant matter while not exercising reasonable diligence in reviewing the First Application, constitutes a clear, separate, and distinct violation of 12 CFR §1024.41(g).

88. As a result of Shellpoint's actions in causing its investor BONY to move for summary judgment against the Estrellas after the Estrellas submitted a facially complete loss mitigation application, caused the Estrellas actual damages, including the attorney's fees incurred in the time spent preparing NOE #2 and #3, the postage cost of mailing the NOE, and the attorney's fees incurred in defending the motion for summary judgment.

89. Shellpoint's actions are believed to be a part of a pattern and practice of behavior in conscious disregard for the Estrellas's rights.

90. As a result of Shellpoint's actions, Shellpoint's is liable to the Estrellas for actual damages, statutory damages, costs, and attorneys' fees.

**COUNT THREE: AGAINST SHELLPOINT**
**VIOLATION OF 12 C.F.R. §1024.41(c)**
**(Failure to perform a review of a borrower's eligibility for any and all loss mitigation options available to a borrower within thirty (30) days of receipt of a complete loss mitigation application)**

91. The Estrellas restates and incorporates herein all of her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten

19

92.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))"

93.     12 C.F.R. § 1024.41(c)(1) provides that if a servicer receives a complete loss mitigation application more than thirty-seven (37) days prior to a foreclosure sale, then, within thirty (30) days of receiving the complete loss mitigation application, the servicer *must*: (i) evaluate the borrower for any and all loss mitigation options available to the borrower; and, (ii) provide written notice to the borrower "stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage."

94.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(b)(3) provides that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale.

*95.*     The Estrellas submitted a complete loss mitigation application to Shellpoint on December 1, 2017. ***See Exhibit 7, 8***.

96.     On or around January 10, 2018, Shellpoint sent the Estrellas correspondence informing them that "[w]e are unable to offer you a loss mitigation option because you did not provide us with the documents we requested." ***See Exhibit 9***.

97.     At no point between December 1, 2017 and January 10, 2018 did Shellpoint send correspondence to the Estrellas requesting additional documents.

98.     Therefore, as of December 1, 2017, the Estrellas had submitted any and all documentation requested by Shellpoint in order to constitute a complete loss mitigation application.

99.     Shellpoint was in possession of a complete loss mitigation application as of August December 1, 2017.

100.    As such, pursuant to 12 C.F.R. § 1024.41(c)(1), Shellpoint was required, within thirty (30) days of December 1, 2017, to: (i) evaluate the Estrellas for any and all loss mitigation options available to the Estrellas; and, (ii) provide written notice to the Estrellas "stating [Shellpoint's] determination of which loss mitigation options, if any, it will offer to [the Estrellas] on behalf of the owner or assignee of the mortgage

101.    That is, pursuant to 12 C.F.R. § 1024.41(c)(1), Shellpoint was required to evaluate the Estrellas for all loss mitigation options available to the Estrellas and send written notice to the Estrellas detailing their determination of the Estrellas' eligibility for such, on or before December 31, 2017.

102.    Shellpoint did not issue any requests to the Estrellas for any additional or missing information and/or documentation, of which Shellpoint was not already in possession, in order to supplement or otherwise complete the loss mitigation application during the time period from December 1, 2017 to December 31, 2017.

103.    Shellpoint did not evaluate the Estrellas for all loss mitigation options available to the Estrellas and send written notice to the Estrellas detailing their determination of the Estrellas' eligibility for such, on or before December 31, 2017.

104.    Shellpoint's failure to review the Estrellas' complete loss mitigation application within thirty (30) days of receipt constitute a clear, separate, and distinct violation of 12 C.F.R. §1024.41(c).

105.    As described *supra*, the Estrellas' Second Application has been complete since April 25, 2018. ***See Exhibits 14, 15***.

106.    At no point between April 25, 2018 and this complaint did Shellpoint send correspondence to the Estrellas requesting additional documents.

107.    Therefore, as of April 25, 2018, the Estrellas had submitted any and all documentation requested by Shellpoint in order to constitute a complete loss mitigation application.

108.    Shellpoint was in possession of a complete loss mitigation application as of August April 25, 2018.

109.    As such, pursuant to 12 C.F.R. § 1024.41(c)(1), Shellpoint was required, within thirty (30) days of April 25, 2018, to: (i) evaluate the Estrellas for any and all loss mitigation options available to the Estrellas; and, (ii) provide written notice to the Estrellas "stating [Shellpoint's] determination of which loss mitigation options, if any, it will offer to [the Estrellas] on behalf of the owner or assignee of the mortgage

110.    That is, pursuant to 12 C.F.R. § 1024.41(c)(1), Shellpoint was required to evaluate the Estrellas for all loss mitigation options available to the Estrellas and send written notice to the Estrellas detailing their determination of the Estrellas' eligibility for such, on or before May 25, 2018.

111.   Shellpoint's repeated failures to review the Estrellas' complete loss mitigation application within thirty (30) days of receipt caused the Estrellas actual damages, including the attorney's fees and postage incurred in the preparation of NOE's #2 and #3, the postage cost of the NOE's, the preparation and submission of a new loss mitigation application, and otherwise defense of the pending foreclosure, including defending the motion for summary judgment.

112.   Shellpoint's actions are believed to be part of a pattern and practice of behavior in conscious disregard for the Estrellas' rights.

113.   As a result of Shellpoint's actions, Shellpoint is liable to the Estrellas for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT FOUR: AGAINST SHELLPOINT
### Violation of §1024.35(e)
### (Failure to Correct Error Upon Receipt of Notice of Error)

114.   The Estrellas repeat each and every allegation set forth above as if fully set forth herein.

115.   Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. § 1024.35(b), committed in regards the consumer's mortgage loan.

116.   12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either:

(A)   Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)   Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error

occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

117.    12 C.F.R. §1024.35(e)(3) provides, in relevant part:

*In general.*   A servicer must comply with the requirements of paragraph (e)(1) of this section:

[…]

(C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

(ii)  *Extension of time limit.* For asserted errors governed by the time limit set forth in paragraph (e)(3)(i)(C) of this section, a servicer may extend the time period for responding by an additional 15 days (excluding legal public holidays, Saturdays, and Sundays) if, before the end of the 30-day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing. A servicer may not extend the time period for responding to errors asserted under paragraph (b)(6), (9), or (10) of this section

118.    Accordingly, on or about March 2, 2018, the Estrellas sent NOE #2.  ***See Comp.***

***Par. 37-38; Exhibit 11***.

119.    The Estrellas sent NOE #2 to the address which Shellpoint has designed for borrowers to send Notices of Errors to.

120.    The Estrellas, through NOE #2, alleged that Shellpoint committed an error in Shellpoint's failure in: (1) Improperly moving for summary judgment while the Estrellas' complete loss mitigation application was pending review; and,  (2) failing to exercise reasonable diligence in reviewing Application #1.  ***See Exhibit 11***.

121.    Shellpoint, through correspondence dated April 6, 2018, responded to NOE #2. via NOE #2 Response. *See Exhibit 14*.

122.    In NOE #2 Response, Shellpoint confirmed it was responding to NOE #2 by indicating "[t]his is in response to your correspondence March 2, 2018."   The only correspondence the Borrower sent Shellpoint dated March 2, 2018 was NOE #2 – therefore, NOE #2 Response was sent directly in response to NOE #2. *See Exhibits 11, 14*.

123.    In NOE #2 Response, Shellpoint had a duty to either correct the errors references in NOE #2 or conduct a reasonable investigation and provide an explanation that no error occurred, pursuant to 12 C.F.R §1024.35.

124.    NOE #2 Response failed to properly respond to NOE #2 for two reasons.  First, it did not even substantively address the error alleged in NOE #2 regarding Shellpoint moving for summary judgment in violation of §1024.41(g).  Instead, the only statement in NOE Response #2 even remotely associated with the summary judgment violation is an acknowledgment that it was a mentioned error. This statement falls well short of Shellpoint's requirements provide a written response either correcting the error or notifying the Estrellas that no error occurred.

125.    Second, Shellpoint claimed they did exercise reasonable diligence in reviewing Application #1 because they attempted two telephone calls to the Borrowers regarding missing documents. *See Exhibit 14*.  Again, this statement evidences Shellpoint's failure to conduct a reasonable investigation under 12 C.F.R. §1024.35 as a reasonable investigation would have revealed that Shellpoint was required to send <u>written</u> correspondence.

126.    Furthermore, NOE #2 Response failed to provide a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information

regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance as required by 12 C.F.R. §1024.35.

127.    Shellpoint's failure to properly respond to NOE #2 constitutes a clear, separate, and distinct violation of 12 C.F.R. §1024.35 and caused the Estrellas actual damages including the attorney's fees for the time spent and the postage incurred in preparing NOE #3, the attorney's fees in spent in the continued submission of Application #2, and the attorneys' fees incurred in defending the motion for summary judgment.

128.    Shellpoint's actions are believed to be part of a pattern and practice of behavior in conscious disregard for the Estrellas' rights.

129.    As a result of Shellpoint's actions, Shellpoint is liable to the Estrellas for actual damages, statutory damages, costs, and attorneys' fees.

**COUNT FIVE: AGAINST SHELLPOINT**
**Violation of §1024.36**
**(Failure to Properly Respond to Request for Information)**

130.    The Estrellas repeat each and every allegation set forth above as if fully set forth herein.

131.    12 C.F.R. § 1024.36(a) provides:

> A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan.

132.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

133.   12 C.F.R. §1024.36(d)(1) provides that a servicer must respond to a request for information by either "[p]roviding the borrower with the requested information and contact information, including a telephone number, for further assistance in writing" or "[c]onducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance."

134.   The RFI constitutes a request for information pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B). *See Exhibit 1*. The RFI was received by Shellpoint on October 24, 2017. *See Exhibit 3*.

135.   Pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B), Shellpoint was required to send a written response to the requests contained in the RFI on or before December 6, 2017.

136.   Shellpoint responded to the RFI via correspondence dated November 1, 2017 (the "Response"). *See Exhibit 3*.

137.   As noted in the NOE #1, the Response was deficient as it failed to provide all the information requested in the RFI.

138.   Shellpoint's actions, in failing to properly respond to the RFI in compliance with the requirements of 12 C.F.R. §§ 1024.36(c) and 1024.36(d), constitute a willful violation of 12 C.F.R. § 1024.36(d).

139.   Shellpoint's actions are a pattern and practice of behavior in conscious disregard for the Estrellas' rights.

140.    As a result of Shellpoint's failure to properly respond to the RFI, the Estrellas suffered actual damages, including the attorney's fees incurred for the time in preparing NOE #1 and the postage cost for mailing the NOE.

141.    As a result of Shellpoint's actions, Shellpoint is liable to the Estrellas for actual damages, statutory damages, costs, and attorneys' fees.

### COUNT SIX: AGAINST SHELLPOINT
**Violation of N.J.S.A §56:8-2**
**(Consumer Fraud Act)**

142.    The Estrellas restate and incorporate herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

143.    The New Jersey Consumer Fraud Act (the "CFA") prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate...

N.J.S.A. §56:8-2.

144.    In the operation of its business, Shellpoint has engaged in the use of unconscionable commercial practices through its pattern and practice of disregarding and violating the regulations set forth under 12 C.F.R. §§1024.36, 1024.35, and 1024.41, as described *supra*.

145.    Each unconscionable practice, false promise, misrepresentation and/or knowing omission of material fact by Shellpoint described *supra* constitutes a separate violation under the CFA.

146.    Shellpoint's unconscionable commercial practices have caused the Estrellas the following ascertainable losses:

    A.  Retain and pay legal counsel to submit Application #2;

    B.  Retain and pay legal counsel to submit NOE's #1, #2, and #3;

    C.  Retain and pay legal counsel to defend the improperly filed motion for summary judgment; and

    D.  Extreme emotional distress directly and proximately caused by not knowing day to day whether or not her Shellpoint, through Parker McCay, would continue proceeding with the foreclosure in violation of federal law and cause them to lose their house

## CONCLUSION

147.    Defendant Shellpoint's "dual-tracking" and delays in reviewing the loan modification for the Estrellas in this case are consistent with their continuing poor mortgage servicing practices and non-compliance with the RESPA regulations contained in 12 C.F.R. §1024.41 et seq. Defendant's conduct is part of a pattern and practice and, pursuant to 12 U.S.C. §2605 (f)(1)(B), the Estrellas are entitled to statutory penalties for each and every violation of the regulations contained in 12 C.F.R., §§1024.35, 1024.36, and 1024.41.

148.    As a direct and proximate result of Defendant's conduct and the distinct and ongoing violations above enumerated, the Estrellas suffered actual damage in the form of embarrassment with their neighbors, wasted time, frustration, and humiliation along with the emotional distress that follows from the improperly advanced foreclosure proceeding. the Estrellas was forced to incur attorney fees and costs to investigate and defend the foreclosure

action pending against her, and attorney fees to investigate and prepare this suit and has suffered further damage to her already weakened credit profile.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Estrellas pray that this Court enter its order granting judgment against New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing for the following:

A.   For the Estrellas' actual damages, costs, and reasonable attorney fees;

B.   For statutory damages of up to Two Thousand Dollars ($2,000.00) against Shellpoint as to each violation of Regulation X and RESPA contained within Counts One, Two, Three, Four, and Five;

C.   For treble damages, attorneys' fees, and costs against Shellpoint as to Count Six;

D.   Punitive damages; and,

E.   Such other relief which this Court may deem appropriate.

Respectfully submitted,

/s/ Javier L. Merino
Javier L. Merino
DannLaw
1 Meadowlands Plaza, Suite 200
East Rutherford, NJ 07073
201/355-3440
Fax (216) 373-0536
notices@dannlaw.com

## **Jury Demand**

The Estrellas hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Javier L. Merino
Javier L. Merino
DannLaw
